UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION

| | |
|---|---|
| Zilphia Howze, individually and on behalf of all others similarly situated, | 1:22-cv-00351 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Mondelēz Global LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Mondelēz Global LLC ("Defendant") manufactures, labels, markets, and sells shortbread cookies under the Lorna Doone brand ("Product").



2. The representations of the square cookies, "Lorna Doone," and tartan (plaid) packaging, are evocative of Scottish themes.

3. The brand name, "Lorna Doone," comes from the name of a character in an 1869 Scottish novel by R.D. Blackmore.

4. The interlocking yellow and white stripes are referred to as a tartan and are part of

Scotch culture.

5. The representations are misleading to consumers because despite an expectation that a product identified as shortbread contains some butter, the Product contains no butter.

6. Shortbread was invented in Scotland centuries ago and derived its name from its short, or crumbly, structure, caused by the high proportion of fat, in the form of butter.

7. The high fat content of shortbread inhibits gluten, allowing the dough to rise, contributing to the tender, crumbly texture.

8. All forms of baked goods identified as shortbread are based on sugar, shortening in the form of butter, and wheat flour.

9. Dictionary.com defines shortbread as a "a butter cookie commonly made in thick, pie-shaped wheels or rolled and cut in fancy shapes."

10. Lexico, from Oxford Dictionary, calls it a "crisp, rich, crumbly type of cookie made with butter, flour, and sugar."

11. The Cambridge Dictionary describes a type of sweet cookie that contains a lot of butter.

12. Collins Dictionary defines it as a kind of cookie made from flour, sugar, and butter.

13. Google Dictionary – based on its leading search engine that discovers the most relevant and accurate information – defines shortbread as a crisp, rich, crumbly type of cookie made with butter, flour, and sugar.

14. Other dictionaries define it as "[A] cookie made of flour, sugar, and much butter or other shortening" and "a hard sweet cookie made with a large amount of butter."

15. Commercial treatises define shortbread consistently with mainstream dictionaries.

16. In Biscuit Manufacture: Fundamentals of In-Line Production, P.R. Whitely

2

emphasized that that while shortbread is not required to only have butter, it must have a significant percentage of butter relative to any other shortening ingredients.

17. Nicholas Malgieri, author of "How to Bake" by Harper Collins, concurred with Whitely's analysis, noting, "You can't make shortbread without butter."

18. The expectation that shortbread is made with butter is not limited to experts in food science.

19. One amateur food writer noted that most experts have agreed that whether shortbread is made commercially or in one's kitchen, the presence of butter is essential.

20. A popular recipe website emphasizes the importance of butter to shortbread, advising to use only butter and not vegetable oils, because this negatively affects not only the taste but the crumbly texture.

21. A layperson recently reviewing the Product on Amazon.com was critical, asking rhetorically, "How can you make shortbread without butter?"

22. Since the time butter was first discovered, there have been attempts to imitate it with lower quality substitutes.

23. Since the late nineteenth century, this has been in the form of vegetable oils.

24. Vegetable oils like palm oil are solid at room temperature and referred to as "hard [vegetable] fats."

25. Vegetable fats are unable to provide the structural, organoleptic, nutritional, and sensory properties to shortbread that butter does.

26. Consumers expect that a food identified as shortbread contains at least some butter.

27. However, the Product's ingredient list reveals it is inconsistent with what consumers expect from shortbread cookies, shown by the absence of butter.

> INGREDIENTS: UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), SUGAR, CANOLA OIL, PALM OIL, CORN FLOUR, SALT, HIGH FRUCTOSE CORN SYRUP, BAKING SODA, SOY LECITHIN, CORNSTARCH, ARTIFICIAL FLAVOR.

**INGREDIENTS:** UNBLEACHED ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE {VITAMIN B1}, RIBOFLAVIN {VITAMIN B2}, FOLIC ACID), SUGAR, ==CANOLA OIL, PALM OIL,== CORN FLOUR, SALT, HIGH FRUCTOSE CORN SYRUP, BAKING SODA, SOY LECITHIN, CORNSTARCH, ARTIFICIAL FLAVOR.

28. In place of using any butter, the Product exclusively uses vegetable shortening, shown through the listing of "CANOLA OIL [and] PALM OIL," as the third and fourth ingredients, after flour and sugar.

29. The result of substituting vegetable oils for butter is that the Product lacks the nutritional, organoleptic, and sensory attributes of shortbread.

30. The substitution of palm oil and canola oil for butter reduces costs.

31. Butter does more than provide structure and texture to shortbread, but imparts a butter taste, due to the hundreds of lactones or aroma compounds it contains.

32. In place of butter, the Product adds artificial flavor to imitate the flavor of butter.

33. The addition of artificial flavor is required to be disclosed on the front label, i.e., "Artificially Flavored Shortbread Cookies." *See* 21 C.F.R. § 101.22(i)(2).

34. The front label does not tell consumers they are getting a "Shortbread-Style Cookie" or a "Shortbread Flavored Cookie," but a "Shortbread Cookie."

35. Shortbread cookies made with the expected ingredients are not a rare or pricy delicacy that would make a reasonable consumer "double check" to confirm the presence of butter

by scouring the packaging.

36. These products exist in the marketplace and are not technologically or otherwise unfeasible to produce.

37. While some brands of shortbread cookies highlight that they are made with butter, this is not required or universal, because manufacturers and consumers understand and expect shortbread to be made with butter.

38. For instance, Favorite Day brand from Target sells "Butter Shortbread" cookies described as "made with real butter."



**INGREDIENTS:** ENRICHED WHEAT FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMIN MONO-NITRATE, RIBOFLAVIN, FOLIC ACID), SALTED BUTTER (CREAM, SALT), POWDERED SUGAR (CANE SUGAR, CORN STARCH), VANILLA, SEA SALT.

39. The ingredients in the Favorite Day shortbread list only butter for shortening.

40. Walker's Pure Butter Shortbread lists only butter for shortening.

5





**INGREDIENTS:**
*WHEAT FLOUR, BUTTER, SUGAR, SALT*

41. Even where shortbread cookies do not use the term "butter" on their front label, they are still made with butter.

42. For instance, Dublin Shortbread by Pepperidge Farm lacks any references to butter.

6



**MADE FROM:** ENRICHED WHEAT FLOUR (FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), BUTTER, SUGAR, FRUCTOSE, CONTAINS 2% OR LESS OF: NONFAT MILK, EGG WHITES, SALT, BAKING SODA, NATURAL FLAVOR, SOY LECITHIN.

43. However, the ingredients list only butter as a shortening ingredient.

44. Other shortbread cookies that do not contain butter as the exclusive shortening ingredient will still contain some butter.

45. In contrast, the Product has no butter.

46. Consumers expect that companies – especially larger and respected businesses, to tell them the truth, not half-truths.

47. Consumers of the Product will not be so distrustful to scrutinize the fine print of the ingredient list to confirm the that it lacks butter.

48. Consumers expect shortbread cookies, especially where the labeling invokes Scottish themes, through the Lorna Doone name and plaid packaging, to contain butter.

7

49. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

50. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

51. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

52. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

53. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

54.

The Product is sold for a price premium compared to other similar products, no less than approximately $3.79 for three packages of three cookies (4.5 OZ or 129g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Similar products which have an equivalent amount and/or proportion of shortbread ingredients are sold for a lower price of approximately $3.29 for three packages of three cookies (4.5 OZ or 129g).

55.

56. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.79 for three packages of three cookies (4.5 OZ or 129g), excluding tax and sales, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

57. Other similar products which contain butter are sold for lower prices.

## Jurisdiction and Venue

58. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

59. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

60. Plaintiff Zilphia Howze is a citizen of New York.

61. Defendant Mondelēz Global LLC is a Delaware limited liability company with a principal place of business in East Hanover, Morris County, New Jersey. and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

62. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

63. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

64. The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

65. Venue is in the Buffalo Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Erie County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

## Parties

66. Plaintiff Zilphia Howze is a citizen of Buffalo, Erie, New York.

9

67. Defendant Mondelēz Global LLC is a Delaware limited liability company with a principal place of business in East Hanover, New Jersey, Morris County.

68. The predecessor of Mondelēz was the National Biscuit Company ("Nabisco"), formed in 1898 from a merger of over 100 bakeries.

69. Nabisco revolutionized packaged snacks through wrapping which maintained freshness and kept out debris.

70. Prior to this, crackers were sold loose in a barrel, which is where the term "cracker barrel" comes from.

71. Nabisco introduced numerous staples of American pantries, including Oreo Cookies, Barnum's Animal Crackers, Honey Maid Grahams, Ritz crackers, Wheat Thins, Saltines, and Chips Ahoy.

72. Nabisco was one of the largest advertisers for much of its history, which created a great reservoir of public trust.

73. Nabisco emphasized its commitment to quality products, labeled honestly, in support of giving workers the value they deserve, which Defendant continues to do.

74. These facts show a company with a significant amount of goodwill and equity when it comes to consumer purchasing.

75. The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

76. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including CVS, 2000 Kensington Ave Amherst NY 14226-4611, between February 15, 2022, and March 15, 2022, and/or among other times.

77. Plaintiff believed and expected the Product contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter because that is what the representations and omissions said and implied, on the front label and the absence of any reference or statement elsewhere on the Product.

78. Through reading and understanding the Product's labeling, including the identification as shortbread cookies, the Scottish themes, and awareness of the use of butter for shortbread cookies, Plaintiff expected the Product contained some butter.

79. references to vitamin C, Plaintiff eschewed consumption of foods which were natural sources of vitamin C and/or and did not consult the Nutrition Facts.

80. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

81. Plaintiff bought the Product at or exceeding the above-referenced price.

82. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

83. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

84. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

85. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so

with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

86. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar shortbread cookies, because she is unsure whether those representations are truthful.

## Class Allegations

87. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Rhode Island, Texas, New Mexico, Maine and Louisiana, who purchased the Product during the statutes of limitations for each cause of action alleged.

88. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

89. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

90. Plaintiff is an adequate representative because her interests do not conflict with other members.

91. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

92. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

93. Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

### New York General Business Law ("GBL") §§ 349 & 350
### (Consumer Protection Statute)

94. Plaintiff incorporates by reference all preceding paragraphs.

95. Plaintiff believed the Product contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter.

96. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

97. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

98. Plaintiff relied on the representations and omissions to believe the Product contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter.

99. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

100. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

101. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

102. Defendant intended that members of the Consumer Fraud Multi-State Class would

13

rely upon its deceptive conduct.

103. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

104. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

105. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter.

106. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

107. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

108. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter.

109. Defendant's representations affirmed and promised that the Product contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter.

110. Defendant described the Product so Plaintiff and consumers believed it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, which became part of the basis of the bargain that it would conform to its affirmations and promises.

111. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

112. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company known for its high quality products.

113. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

114. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

115. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

116. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

117. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

118. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter.

119. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

120. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

121. Defendant had a duty to truthfully represent the Product, which it breached.

122. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company known for its high quality products.

123. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

124. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

125. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

126. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

127. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

128. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained ingredients expected of shortbread, like some amount of butter, instead of not having any butter.

129. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

130. Defendant knew of the issues described here yet did not address them.

131. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

132. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
5. Other and further relief as the Court deems just and proper.

Dated:   May 11, 2022

Respectfully submitted,

                                                               /s/Spencer Sheehan
                                                               Sheehan & Associates, P.C.
                                                               Spencer Sheehan
                                                               60 Cuttermill Rd Ste 412
                                                               Great Neck NY 11021
                                                               Tel: (516) 268-7080
                                                               spencer@spencersheehan.com